# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MOGHBEL SIRUS MIRZAI,

      Plaintiff,

vs.                                    No. CIV 06-0219 JB/LAM

STATE OF NEW MEXICO
GENERAL SERVICES DEPARTMENT,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant State of New Mexico General Services Department's Motion for Summary Judgment, filed December 28, 2006 (Doc. 11)("Motion for Summary Judgment"). The primary issues are: (i) whether Plaintiff Moghbel Mirzai has established a prima facie case of employment discrimination; (ii) whether Defendant New Mexico General Services Department ("GSD") breached an implied or express employment contract between itself and Mirzai; and (iii) whether GSD violated the implied covenant of good faith and fair dealing in its performance of an employment contract with Mirzai. Because the Court believes that there is no genuine issue of material fact in dispute on the federal claims, and that the factual record and all reasonable inferences therefrom, when considered in the light most favorable to Mirzai, do not establish that Mirzai suffered an adverse employment action under controlling law, the Court will grant the motion in part and enter summary judgment on GSD's behalf on all Mirzai's federal claims. The Court will remand Mirzai's remaining state-law claims to the State of New Mexico First Judicial District.

## FACTUAL BACKGROUND

Mirzai is a fifty-four year old male of Persian descent; he was born in Iran and came to the United States in 1974. See Plaintiff's Response to Defendant's Motion for Summary Judgment ¶ 1, at 3 (filed January 31, 2007)(Doc.13)("Mirzai's Response"); Mirzai's Response, Exhibit 1, Deposition of Moghbel Sirus Mirzai at 6:16-7:6 (taken August 18, 2006)("Mirzai's Deposition"). Mirzai began working for the GSD on April 10, 2004, with the working title of Project Manager. See Defendant State of New Mexico General Services Department's Memorandum in Support of their Motion for Summary Judgment ¶ 1, at 1, filed December 28, 2006 (Doc. 12)("Summary Judgement Memorandum"); Mirzai's Response ¶ 1, at 1. At all times relevant to his Complaint, Crystal Antoniades was the Property Control Division's Project Management Team Manager and Mirzai's immediate supervisor. See Summary Judgment Memorandum ¶ 2, at 2; Mirzai's Response ¶ 2, at 1. Bill Taylor, the Director of the GSD's Property Control Division, was Crystal Antoniades' immediate supervisor. See Summary Judgment Memorandum ¶ 3, at 2; Mirzai's Response ¶ 3, at 1.

Mirzai maintains that, in July 2004, Antoniades requested he contact Daryush Madani, the owner of Pars Construction, for an estimate related to a construction project involving a laboratory in Albuquerque. See Mirzai's Deposition at 25:2-11. Mirzai states that he complied with the instruction, but that he also informed Antoniades that Madani had previously completed some poor construction work for his niece and that he believed Pars Construction's license had been revoked. See id. at 26:1-6. Mirzai contends, based on information and belief, that Antoniades was involved in a close personal relationship with Madani. See Mirzai's Response ¶ 3, at 4.

On July 27, 2004, Madani sent a letter to Taylor alleging Mirzai had demanded kickbacks

for the work Pars Construction performed for his niece, and suggesting that Madani was familiar with problems in Mirzai's construction education and experience. <u>See</u> Mirzai's Response, Exhibit 6, Letter from Daryush Madani to Bill Taylor at 1 (dated July 27, 2004). Madani also contended that Mirzai had not called him about the laboratory project in a timely fashion -- as Antoniades had instructed -- and that he was uncooperative in Pars Construction's inspection of the project site. <u>See</u> <u>id.</u> at 1-2.

On August 3, 2004, Antoniades issued Mirzai a written letter of reprimand for insubordination and inefficiency in violation of sections 6.2.2 and 6.2.3 of GSD's Code of Conduct. <u>See</u> Mirzai's Response, Exhibit 7, Memorandum from Crystal Antoniades to Moghbel Mirzai at 1-3 (dated August 3, 2004)("August 3, 2004 Reprimand"). In the August 3, 2004 Memorandum, Antoniades accused Mirzai of refusing to contact architects and engineers as instructed, and criticized him for ineffective and incompetent work. <u>See</u> <u>id.</u>

In addition to the letter of reprimand, on August 13, 2004, Antoniades placed Mirzai on a corrective action plan ("CAP") for the purpose of improving his performance. <u>See</u> Mirzai's Response, Exhibit 8, Memorandum from Crystal Antoniades to Sirus Mirzai at 1 (dated August 13, 2004)("CAP"). The CAP that Antoniades issued to Mirzai cited two areas requiring correction: (i) refusal to follow his supervisor's instructions; and (ii) inefficient, unproductive, untimely, and poorly completed work. <u>See</u> <u>id.</u> at 1. Mirzai refused to sign the CAP, and his refusal was noted on the memorandum. <u>See</u> <u>id.</u> at 2.

Later on August 13, 2004, Antoniades amended Mirzai's CAP to include a charge of incompetence and inability to perform in his position, and re-issued the CAP. <u>See</u> Mirzai's Response, Exhibit 9, Memorandum from Crystal Antoniades to Sirus Mirzai at 1 (dated 4:07 p.m.

August 13, 2004)("Revised CAP").  Mirzai refused to sign the Revised CAP, and his refusal was noted on the memorandum.  See Summary Judgment Memorandum ¶ 11, at 3; Mirzai's Response ¶ 11, at 3.

On August 17, 2004, Antoniades issued a Memorandum indicating that Mirzai could be subject to further disciplinary action, including dismissal, because he had failed to return his CAP by August 16, 2004, in accordance with previously given instructions.  See Mirzai's Response, Exhibit 10, Memorandum for Record from Crystal Antoniades to Sirus Mirzai at 1 (dated August 17, 2004)("August 17, 2004 Memorandum").  On September 22, 2004, Antoniades issued a written reprimand to Mirzai asserting Mirzai continued to fail to complete his CAP, and referencing a recent project that Antoniades alleged he handled inadequately and failed to complete.  See Mirzai's Response, Exhibit 11, Memorandum from Crystal Antoniades to Sirus Mirzai at 1 (dated September 22, 2004)("September 22, 2004 Reprimand").

In a letter dated November 11, 2004, Mirzai's attorney issued a Tort Notice to GSD; among other claims, the notice specifically cited discrimination, retaliation, breach of contract, and breach of the covenant of good faith and fair dealing as claims that Mirzai might bring against the GSD. See Mirzai's Response, Exhibit 3, Letter from Gilbert J. Vigil to State of New Mexico Risk Management Division at 1 (dated November 11, 2004)("Tort Notice").

Mirzai was transferred to the Property Management Team under the supervision of Mike Northrup on December 16, 2004.  See Summary Judgment Memorandum ¶ 12, at 3; Mirzai's Response ¶ 15, at 6.  Although Mirzai had previously received several notices of reprimand, and had a CAP imposed upon him, he did not lose any pay, was not demoted, and did not lose any other benefits.  See Summary Judgment Memorandum ¶ 13, at 3; Mirzai's Response ¶ 13, at 3.

Mirzai represents that his attorney first submitted his case for intake to the New Mexico Human Rights Division ("HRD") on October 14, 2004, but because of intake and processing errors, the charge was not processed until July 7, 2005. See Mirzai's Response ¶ 2, at 3; Mirzai's Response, Exhibit 2, Charge of Discrimination at 1 (dated July 7, 2005)("Charge of Discrimination"). Mirzai's Charge of Discrimination alleges discrimination based on sex and national origin, and under a retaliation theory. See Charge of Discrimination at 1.

## PROCEDURAL BACKGROUND

Mirzai filed this action against GSD on February 24, 2006 in the State of New Mexico First Judicial District. See Mirzai v. New Mexico Gen. Servs. Dep't, No. D-101-CV-200600425 (N.M. First Jud. Dist. 2006), Complaint (docket available at www.nmcourts.com/caselookup) ("Complaint"). Mirzai's Complaint alleges three causes of action against GSD: (i) unlawful discrimination based on gender, national origin, age, and retaliatory discrimination in violation of Title VII of the Civil Rights Act of 1964, see id. at 8-9; (ii) breach of contract, see id. at 9; and (iii) breach of the implied covenant of good faith and fair dealing, see id. at 10. On March 23, 2006, GSD removed the action to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(b). See Notice of Removal of State Court Action Pursuant to 28 U.S.C. §§ 1331, 1441(b) and 1446 and F.R.Civ.P. 81(c) on the Basis of a Federal Question, filed March 23, 2006 (Doc. 1).

GSD filed its motion for summary judgment on December 28, 2006. GSD asserts that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Motion for Summary Judgment at 1. GSD moves the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in its favor against Mirzai. See id. GSD also requests the Court grant it attorneys' fees and costs incurred in defending against this

action as well as any other relief the Court deems proper.  See id.

## STANDARD FOR DECIDING SUMMARY JUDGMENT MOTIONS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted). Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact." Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted).

The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

"The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted). The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient;

there must be evidence on which the fact finder could reasonably find for the plaintiff.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

"In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).

When evaluating a motion for summary judgment, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124-25 (10th Cir. 2000).  The court may consider only admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

## LAW REGARDING SUMMARY JUDGMENT IN DISCRIMINATION CASES

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and applicants for employment on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. §§ 2000e-2000e-17; Martinez v. Barnhart, 177 Fed. Appx. 796, 799 (10th Cir. 2006). A plaintiff raising a cause of action under Title VII may demonstrate intentional discrimination through either direct or indirect evidence.  See Orr v. City of Albuquerque, 417 F.3d 1144, 1149

(10th Cir. 2005).  In cases that do not involve direct evidence, a plaintiff may use the burden-shifting scheme the Supreme Court of the United States articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to prove intentional discrimination.  See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191 (10th Cir. 2000).

Under the McDonnell Douglas framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination.  See Carter v. Mineta, 125 Fed. Appx. 231, 235 (10th Cir. 2005).  A plaintiff meets this burden by showing that: (i) he is a member of a protected class; (ii) he suffered an adverse employment action; and (iii) similarly situated employees were treated differently.  See Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d 1211, 1215 (10th Cir. 1998).  The plaintiff's burden at the prima facie stage of the McDonnell Douglas analysis is "not onerous."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  In articulating a prima facie case, "a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant."  Orr v. City of Albuquerque, 417 F.3d at 1149 (quoting EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d at 1193).

Once a plaintiff establishes a prima facie case of discrimination, the burden of proof shifts to the employer to articulate a legitimate, non-discriminatory reason for the alleged employment action.  See  McDonnell Douglas Corp. v. Green, 411 U.S. at 802.  The United States Court of Appeals for the Tenth Circuit has noted that "[t]he defendant's burden at this stage is one of production, not one of persuasion."  EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d at 1191 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254-56).  If the defendant is successful in articulating some legitimate, non-discriminatory reason, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.'"  Bryant v. Farmers Ins.

Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).

If the defendant is able to articulate a non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretext. See Martinez v. Barnhart, 177 Fed. Appx at 799. To establish pretext, a plaintiff must present evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1203 (10th Cir. 2006)(quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). Examples of pretextual evidence include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Merritt v. Tellabs Operations, Inc., No. 06-1198, 2007 U.S. App. LEXIS 3609, at **7-8 (10th Cir. Feb. 15, 2007). The plaintiff is not required to present evidence of actual discrimination to establish pretext, because "[e]vidence tending to show pretext permits an inference that the employer acted for discriminatory reasons." Bryant v. Farmers Ins. Exch., 432 F.3d at 1125. In the context of a motion for summary judgment, "the inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff." Oglesby v. Hy-Vee, Inc., No. 05-3489, 2007 U.S. App. LEXIS 2208, at *9 (10th Cir. Jan. 30, 2007)(quoting Bryant v. Farmers Ins. Exch., 432 F.3d at 1125).

Although the burden of production under the McDonnell Douglas framework shifts from the plaintiff to the defendant and back, the plaintiff bears the ultimate burden of proving intentional

discrimination.  See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d at 1191-92.  Nevertheless, at the summary judgment stage, "if a plaintiff advances evidence establishing a prima facie case and evidence upon which a factfinder could conclude that the defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder."  Ingels v. Thiokol Corp., 42 F.3d 616, 622 (10th Cir. 1994).

## NEW MEXICO LAW REGARDING EMPLOYMENT CONTRACTS

In addition to any express employment contract that might govern an employer-employee relationship, under New Mexico law, "a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined."  Cockrell v. Bd. of Regents of N.M. State Univ., 2002-NMSC-9, ¶ 26, 45 P.3d 876, 887 (quoting Newberry v. Allied Stores, Inc., 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989)).  For a personnel manual to create contractual rights, however,  its terms  "must be sufficiently explicit to create a reasonable expectation of an implied contract." Trujillo v. N. Rio Arriba Elec. Coop., Inc., 2002-NMSC-004, ¶ 22, 41 P.3d 333, 342. The Supreme Court of New Mexico has explained that "[w]hether an implied contract exists is a question of fact, and it may be 'found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct.'" Garcia v. Middle Rio Grande Conservancy Dist., 1996-NMSC-029, ¶ 10, 918 P.2d 7, 10 (quoting Newberry v. Allied Stores, Inc., 108 N.M. at 427, 773 P.2d at 1234).

The New Mexico State Personnel Act, N.M. Stat. Ann. §§ 10-9-1 to -25, "when considered together with a state agency employee handbook, have 'attributes of an employee contract,' because they control the employer-employee relationship and give rise to reasonable employee expectations."

Barreras v. State of N.M. Corr. Dep't, 2003-NMCA-027, ¶ 6, 62 P.3d 770, 772 (quoting N.M.

Regulation & Licensing Dep't v. Lujan, 1999-NMCA-059, ¶ 20, 979 P.2d 744, 749). See Martinez

v. N.M. Dep't of Health, No. CIV 04-1326 JB/RLP, 2006 U.S. Dist. LEXIS 95358, at *37 (D.N.M.

Dec. 4, 2006)(Browning, J.)("Under New Mexico law, the State Employment Act and its attendant

regulations and policies constitute an implied employment contract between state employees and

their respective state employers.")(citing Garcia v. Middle Rio Grande Conservancy Dist., 1996-

NMSC-029, ¶ 10, 918 P.2d at 10; Barreras v. N.M. Corrs. Dep't, 2003-NMCA-27, ¶ 7, 62 P.3d at

772-73).  The State Personnel Act gives the New Mexico State Personnel Board the authority "to

promulgate rules to carry out the provisions of the Personnel Act and to hear appeals by state

employees aggrieved by an agency's action affecting their employment."  Martinez v. N.M. State

Eng'r Office, 2000-NMCA-074, ¶ 22, 9 P.3d 657, 662.  State employees have the right  "to rely on

the progressive discipline policy provided by the State Personnel Board Rules and the procedures

outlined in the [relevant agency's] employee handbook."  N.M. Regulation & Licensing Dep't v.

Lujan, 1999-NMCA-059, ¶ 20, 979 P.2d 744, 749.

Under New Mexico law, a duty of good faith and fair dealing exists in every contract.  See

Jaynes v. Strong-Thorne Mortuary, Inc., 1998-NMSC-004, ¶ 13, 954 P.2d 45, 49.  "The concept of

the implied covenant of good faith and fair dealing requires that neither party do anything that will

injure the rights of the other to receive the benefit of their agreement."  Planning & Design Solutions

v. City of Santa Fe, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994)(quoting Bourgeous v. Horizon

Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994)).  A party breaches the covenant

of good faith and fair dealing by denying a contracting party the benefits owed to it under the

contract.  See WXI/Z Sw. Malls Real Estate Liab. Co. v. Mueller, 2005-NMCA-046, ¶ 25, 110 P.3d

1080, 1087-88 (quoting <u>Planning & Design Solutions v. City of Santa Fe</u>, 118 N.M. at 714, 885 P.2d at 635). A breach of the covenant of good faith and fair dealing requires a showing that the breaching party intentionally used the contract to injure the other party; negligent conduct is insufficient. <u>See</u> <u>Jaynes v. Strong-Thorne Mortuary, Inc.</u>, 1998-NMSC-004, ¶ 13, 954 P.2d at 49.

<u>**LAW REGARDING SUPPLEMENTAL JURISDICTION**</u>

Federal courts are courts of limited jurisdiction. While there is no question that a statutory basis exists for the Court to exercise jurisdiction over the controversy, the issue is whether the Court should exercise its limited discretion to decide the state claims if it dismisses the federal claims. The courts and Congress have indicated when a district court may exercise its discretion to remand state claims and what factors it may consider.

1.     <u>**Supplemental Jurisdiction.**</u>

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. <u>See</u> 28 U.S.C. §§ 1331 and 1332.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>,

-12-

545 U.S. at 552.  The Supreme Court has long subscribed to the concept of supplemental jurisdiction

recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may

exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from

a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

Ancillary jurisdiction gives federal courts the flexibility to hear a cause of action even after the

introduction of third parties whose insertion into the litigation is not supported by any independent

grounds for federal jurisdiction, when those parties share a common interest in the outcome of the

litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S.

365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee

to analyze the federal court system and to recommend reforms.  See 16 Moore's Federal Practice,

§ 106.04[5] (Matthew Bender 3d ed.).  In response to the Committee's findings regarding "pendent"

and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed

the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district
> courts shall have supplemental jurisdiction over all other claims that are so related
> to claims in the action within such original jurisdiction that they form part of the
> same case or controversy under Article III of the United States Constitution. Such
> supplemental jurisdiction shall include claims that involve the joinder or intervention
> of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts

"supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on

claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters

arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee,

Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

### 2. **District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion. See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726. Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the

district courts' supplemental jurisdiction discretion analysis, and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am., Inc. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c).").  At least one other district court in the Tenth Circuit has reached the same conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

## ANALYSIS

Mirzai brings this action against GSD alleging discrimination based on his national origin, gender, and age.  He also argues that GSD unlawfully retaliated against him after he engaged in activity that Title VII protects, and that GSD breached both its employment contract with Mirzai and the covenant of good faith and fair dealing inherent in that contract.  Because the Court does not believe, when it considers the evidentiary record and all reasonable inferences therefrom, that there are any genuine issues of material fact from which a reasonable jury could conclude that Mirzai

suffered an adverse employment action, Mirzai has not established a prima facie case of intentional discrimination under the <u>McDonnell Douglas</u> framework.   Accordingly, the Court will grant summary judgment on GSD's behalf and dismiss Mirzai's claim under Title VII.   Because the Court has dismissed all of Mirzai's federal claims over which it has original jurisdiction, the Court will exercise its discretion to decline jurisdiction over Mirzai's remaining claims, and will remand those claims to the State of New Mexico First Judicial District.

**I.      THERE IS NO GENUINE ISSUE OF MATERIAL FACT.**

In his response to GSD's motion for summary judgment, Mirzai does not contest the factual content of the events GSD describes, but limits his dispute to how the conduct underlying those events is characterized, and the reasons GSD proffers for its conduct.

As an example, GSD's Undisputed Material Fact No. 4 indicates that Antoniades issued Mirzai a letter of reprimand for insubordination and inefficiency on August 3, 2004. <u>See</u> Summary Judgment Memorandum ¶ 4, at 2.   Mirzai does not deny that he received his letter, but limits his objection to his contention that he was wrongfully reprimanded. <u>See</u> Mirzai's Response ¶ 4, at 1. In fact, Mirzai attaches the August 3, 2004 reprimand letter as Exhibit 7 to his Response. <u>See</u> August 3, 2004 Reprimand.

Similarly, GSD's Undisputed Material Fact No. 5 contends that the reason for the insubordination charge contained in the letter was Mirzai's intentional refusal to follow Antoniades' direction that he contact certain architects and engineers involved in GSD projects. <u>See</u> Summary Judgment Memorandum ¶ 5, at 2.   Mirzai does not contest that this was the reason GSD proffered for the reprimand or the basis for GSD's assertion that he was insubordinate, but counters that he was not insubordinate and that he did not refuse to follow any reasonable and proper instruction.

<u>See</u> Mirzai's Response ¶ 5, at 1.  Moreover, Mirzai does not contend that he called the architects and engineers immediately, as he was instructed, but argues that the instructions he was given were unreasonable.  <u>See id.</u> ¶ 5, at 2; Mirzai's Deposition at 29:17-23.

In sum, while Mirzai has questioned GSD's motivation for many of the actions it took, and its characterization of his conduct, he has not contested the sequence of events relevant to his case or argued that particular acts or omissions that GSD alleges did not occur.  While the assertions about these events that Mirzai makes in his response to GSD's motion for summary judgment and in his deposition testimony are relevant to the Court's analysis of this motion, they do not create any dispute of material fact.

## II.    MIRZAI HAS NOT ESTABLISHED THE PRIMA FACIE CASE OF INTENTIONAL DISCRIMINATION NECESSARY TO SURVIVE SUMMARY JUDGMENT IN A <u>DISCRIMINATION ACTION.</u>

Mirzai does not contend that he has offered direct evidence of intentional discrimination, and in his response to GSD's motion for summary judgment, Mirzai employs the <u>McDonnell Douglas</u> burden shifting analysis.  Under the <u>McDonnell Douglas</u> framework, however, Mirzai bears the initial burden of establishing a prima facie case of discrimination.  Although a plaintiff's burden at the prima facie phase is not onerous, Mirzai must present some evidence raising an inference of discrimination.  Because Mirzai has not, however, presented any evidence that he suffered an adverse employment action -- a required element of a prima facie case -- he has not met this light burden and the Court will award GSD summary judgment on Mirzai's discrimination claim.

### A.    MIRZAI HAS NOT MET HIS INITIAL BURDEN TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION.

To meet his burden to establish a prima facie case of discrimination, Mirzai must

demonstrate that: (i) he is a member of a protected class; (ii) he suffered an adverse employment action; and (iii) similarly situated employees were treated differently.  See Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d at 1215.  Because Mirzai has not presented evidence that he suffered an adverse employment action, the Court finds that he has not satisfied his burden under the first stage of the McDonnell Douglas framework and will grant GSD summary judgment on his discrimination claims.

As a preliminary matter, the Court notes that, in his Complaint and in his response to GSD's motion for summary judgment, Mirzai alleges that he was discriminated against based on his gender, national origin, and age, and under a theory of retaliation.  See Complaint ¶¶ 38, 40, at 8-9; Mirzai's Response at 7.  As statutory grounds for his action, however, Mirzai's Complaint references only Title VII, which does not create a cause of action for age discrimination.  See 42 U.S.C. §§ 2000e-2000e-17.  In its Answer to Mirzai's Complaint, GSD asserts that Mirzai has failed to state an age discrimination claim in Count I upon which relief can be granted.  See Defendant's Answer to Plaintiff's Complaint for Damages from Unlawful Gender, National Origin, Age and Retaliation, Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing at 7, filed March 29, 2006 (Doc. 2).

In his response to GSD's motion for summary judgment, Mirzai references, for the first time, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1 to -15 ("HRA"), both of which prohibit employment discrimination on the basis of age.  The Supreme Court of the United States, however, has held that the Eleventh Amendment precludes claims under the ADEA against states in federal court.  See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 82-83 (2000)(holding that the ADEA is not appropriate

legislation under section five of the Fourteenth Amendment and therefore is not a legitimate Congressional abrogation of the States' sovereign immunity).  See Dixon v. Regents of the Univ. of N.M., No. 99-2245, 2000 U.S. App. LEXIS 25139, at **7-8 (10th Cir. Oct. 6, 2000); Gill v. Pub. Employees Ret. Bd., 2004-NMSC-016, ¶ 7, 90 P.3d 491, 495.

On the other hand, the Supreme Court of New Mexico has observed that the HRA provides victims of age discrimination with a cause of action for damages against the state.  See Gill v. Pub. Employees Ret. Bd., 2004-NMSC-016, ¶ 30, 90 P.3d at 501.  Accordingly, taking into consideration the remedial nature of the statutes at issue, in the interest of reading the pleadings liberally so that the Mirzai's cause of action can be decided on its merits rather than on a procedural technicality, and because the Court believes that Mirzai's Complaint put GSD on notice that it would have to defend against an age discrimination claim, the Court will interpret the Complaint to contain a claim for age discrimination under the HRA.

The Court's recognition of this additional claim, however, does not affect its analysis. The Supreme Court has acknowledged the helpfulness of the McDonnell Douglas framework in analyzing age discrimination cases brought under the ADEA involving circumstantial evidence, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141-42 (2000), and the Tenth Circuit has formally adopted that framework for ADEA claims, see Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1165 (10th Cir. 2000).  Both the Tenth Circuit and the Supreme Court of New Mexico have acknowledged that the McDonnell Douglas framework is appropriate for discrimination claims brought under the HRA involving indirect evidence of discrimination.  See Orr v. City of Albuquerque, 417 F.3d at 1148-49; Cates v. Regents of the N.M. Inst. of Mining & Tech., 1998-NMSC-002, ¶ 15, 954 P.2d 65, 69-70.

### 1.     <u>Mirzai is a Member of the Requisite Protected Classes</u>.

GSD does not argue that Mirzai is not a member of a protected class. Mirzai is a fifty-four year old male of Persian descent; he was born in Iran and came to the United States in 1974. <u>See</u> Mirzai's Response ¶ 1, at 3. The GSD confines its argument to its contention that Mirzai has failed to establish a prima facie case of discrimination, because he has failed to offer sufficient evidence that he suffered an adverse employment action.

### 2.     <u>Mirzai has not Demonstrated that he Suffered an Adverse Employment Action</u>.

GSD contends that Mirzai has not stated a prima facie case of discrimination because he has not suffered an adverse employment action. <u>See</u> Summary Judgment Memorandum at 6. Mirzai counters that he suffered several distinct adverse actions that all sustain viable claims under the law. <u>See</u> Mirzai's Response at 8. Specifically, Mirzai references the August 3, 2004 letter of reprimand that Antoniades issued and the subsequent CAP and memoranda that followed that letter, and his December 2004 transfer to the Property Management Team as adverse employment actions that the GSD took against him. <u>See</u> <u>id.</u> at 9-12. Because the Court does not believe that, when it views the evidentiary record and all inferences therefrom in the light most favorable to Mirzai, either Antoniades' written reprimand and subsequent memoranda or Mirzai's transfer can be considered an adverse employment action consistent with Tenth Circuit caselaw, the Court does not believe that Mirzai has satisfied the second prong of the prima facie test.

### a.     <u>Antoniades' Written Reprimand, Subsequent Memoranda, and Allegedly Disagreeable Treatment of Mirzai are not Adverse Employment Actions</u>.

Mirzai contends that Antoniades' "demeaning" treatment began with the August 3, 2004

issuance of the letter of reprimand that Mirzai argues was based on a false premise.  Mirzai's Response at 9-10.  Mirzai argues that the treatment continued on August 13, 2004, when Antoniades imposed a CAP upon Mirzai and amended the CAP later in the day after Mirzai refused to sign the CAP.  See id. at 10.  Mirzai asserts that Antoniades "add[ed] insult to injury" when, on August 17, 2004, she issued a Memorandum indicating that Mirzai could be subject to further disciplinary action, including dismissal, because he had failed to return his CAP by August 16, 2004, in accordance with previously given instructions.  Id. at 11.  According to Mirzai, this treatment culminated in a September 22, 2004 written reprimand in which Antoniades asserted that Mirzai continued to fail to complete his CAP, and in which she referenced a recent project that Antoniades alleged Mirzai had handled inadequately.  Mirzai contends that the issuance of these documents, combined with Antoniades' controlling behavior manifest in her demands to know "what [Mirzai] did all day," her insistence that he not take breaks, and her requirement that he present verification of medical appointments and copies of his degrees and licenses --  requirements he alleges were not imposed on other employees --  constituted "persistent attacks" that "severely limited any potential he would have had for upward mobility, and continued to place him in a situation of threat to his employment."  Id. at 10-11.  See Mirzai's Deposition at 58:13; 61:12-62:4; 66:17-23.

Mirzai cites Jeffries v. Kansas Department of Social & Rehabilitation Services, 147 F.3d 1220 (10th Cir. 1998), and states that, in that case, the Tenth Circuit held that "verbal interrogation and reprimand, threats to withdraw supervision and not renew the employee's contract were sufficient to constitute adverse employment actions even though the actions did not actually have an adverse impact on the terms and conditions of the employee's employment."  Mirzai's Response at 9 (citing Jeffries v. Kan. Dep't of Social & Rehabilitation Servs., 147 F.3d at 1232-33).  Because

the Court believes, however, that Mirzai has not correctly characterized the Tenth Circuit's holding in Jeffries v. Kansas Department of Social & Rehabilitation Services, and has not taken into account unique facts present in that case or subsequent Tenth Circuit caselaw that questions the legal standard applied to reach its holding, the Court believes that Mirzai's reliance on Jeffries v. Kansas Department of Social & Rehabilitation Services is not sound.

The plaintiff in Jeffries v. Kansas Department of Social & Rehabilitation Services was a female who had been employed as a resident chaplain and student in the Clinical Pastoral Education Program ("CPE Program") at a Kansas state hospital.  See 147 F.3d at 1223.  The CPE Program was a unique program in which chaplains would provide spiritual care to hospital patients who requested it, but would also, during the course of their employment, receive pastoral education from CPE Program supervisors.  See id. at 1223-24.  The plaintiff in Jeffries v. Kansas Department of Social & Rehabilitation Services alleged that, after initiating a state sexual harassment investigation  in response to an incident involving an unwanted sexual advance from a co-worker, she suffered adverse employment actions in the form of verbal upbraiding from her supervisor, her supervisor's refusal to continue supervising her pastoral education, and threats that her annual contract with the CPE Program would not be renewed.  See id. at 1231.

In reversing the district court's determination that these actions did not constitute an adverse employment action, the Tenth Circuit in Jeffries v. Kansas Department of Social & Rehabilitation Services noted that, "[i]n recognition of the remedial nature of Title VII, the law in this circuit liberally defines adverse employment actions."  Id. at 1232.  The Tenth Circuit criticized the district court's requirement that an adverse employment action must be "material" before it was actionable, and asserted that it had not previously recognized a "materiality" element in the definition of an

adverse employment action.  Id.  The Tenth Circuit held that the plaintiff's allegations that her supervisor "told her he would not supervise her as a student, issued repeated threats that her contract would not be renewed at the end of the year, and refused to supervise her as a student for the duration of her employment, is sufficient to raise a genuine factual dispute as to whether she suffered an adverse employment action in retaliation for her complaint." Id. at 1232.

Despite reaching this conclusion, the Tenth Circuit in Jeffries v. Kansas Department of Social & Rehabilitation Services did "not decide whether threats can constitute 'adverse employment action' in and of themselves." Id.  In reversing the district Court, the Tenth Circuit emphasized that it need not reach that question because of the unique facts of the case.  The Tenth Circuit explained that the plaintiff in Jeffries v. Kansas Department of Social & Rehabilitation Services had contracted for both employment and educational benefits, and therefore, when her supervisor withdrew his supervision of her pastoral education, the plaintiff "was obviously deprived of the educational benefit she contracted to receive with all of the attendant consequences." Id. at 1233.

Although Mirzai cites Jeffries v. Kansas Department of Social & Rehabilitation Services in support of his position that he suffered an adverse employment action, he does not point to unique facts in his case that make it comparable to the employment/education arrangement in Jeffries v. Kansas Department of Social & Rehabilitation Services, and he does not explain how the written reprimand, the CAP, or any of the associated memoranda Antoniades issued deprived him of a benefit for which he contracted.  Moreover, he does not address more contemporary Tenth Circuit caselaw that, unlike Jeffries v. Kansas Department of Social & Rehabilitation Services, suggests a materiality requirement is part of the definition of an adverse employment action.  See Lujan v. Johanns, 181 Fed. Appx. 735, 737 (10th Cir. 2006)("To constitute an adverse employment action,

the employer's conduct must be materially adverse to an employee's job status.")(internal quotation omitted); Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1213 (10th Cir. 2003)("To be an adverse action, the employer's conduct must be 'materially adverse' to the employee's job status."); Hillig v. Rumsfeld, 381 F.3d 1028, 1038 (10th Cir. 2004)(O'Brien, J., dissenting)("[T]he materiality test rejected in [Jeffries v. Kansas Department of Social & Rehabilitation Services] seems to have found new life.").  Subsequent to its opinion in Jeffries v. Kansas Department of Social & Rehabilitation Services, the Tenth Circuit has explained that, "[a]lthough we 'liberally define an adverse employment action, its existence is determined on a case by case basis and does not extend to a mere inconvenience or an alteration of job responsibilities.'"  Carter v. Mineta, 125 Fed. Appx. at 239 (quoting Wells v. Colo. Dep't of Transp., 325 F.3d at 1212-13).  To constitute an adverse employment action, the action a plaintiff alleges "must amount to a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . causing a significant change in benefits." Lujan v. Johanns, 181 Fed. Appx. at 737 (quoting Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004)).

In Rennard v. Woodworker's Supply, Inc., 101 Fed. Appx. 296 (2004), the Tenth Circuit considered a case in which an employee had alleged that a written reprimand and a negative performance evaluation were an adverse employment action.  The plaintiff in Rennard v. Woodworker's Supply, Inc. had reported allegations that at least two of her co-workers had sexually harassed her several months after the incidents of harassment were supposed to have occurred.  See id. at 299-300.  After conducting an investigation into the allegations, the employer, Woodworker's Supply, Inc. ("WSI"), decided to discipline one of the co-workers and the plaintiff.  See id. at 300. WSI issued the plaintiff a "Written Reprimand" indicating that she was being disciplined for failure

to report incidents of sexual harassment within one week of their occurrence, and informing the plaintiff that failure to improve immediately in that area could result in her "suspension and/or final written warning."  Id.  The day after receiving the written reprimand, the plaintiff was issued an "Evaluation Report" that her supervisor prepared and which stated that "recently [the plaintiff] has become a high maintenance employee.  A high level of Managements time, as well as other WSI employees time has been interrupted, causing an undesirable work atmosphere conducive to a high productivity level."  Id. at 301.

In rejecting the plaintiff's argument that the reprimand and subsequent performance evaluation were adverse employment actions, the Tenth Circuit in Rennard v. Woodworker's Supply, Inc. acknowledged that, "[t]o establish an adverse employment action, the employee must demonstrate that the employer's conduct was 'materially adverse' to the employee's job status," and explained that "[u]nsubstantiated oral reprimands and unnecessary derogatory comments . . . are not included within the definition of adverse [employment] action absent evidence that they had some impact on the employee's employment status."  Id. at 307 (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 533 (10th Cir. 1998)).  The Tenth Circuit reasoned that "[t]he written reprimand that WSI issued to plaintiff constituted a first step in WSI's progressive disciplinary process, and the reprimand expressly stated that plaintiff could be suspended and/or terminated if she failed to comply with the company's sexual harassment policy in the future," but concluded  that, because "it is undisputed that WSI did not take any other action against plaintiff in connection with the reprimand[,] . . . the reprimand had [no] immediate or practical effect on her job status," and the record was insufficient  to establish that the written reprimand was an adverse employment action.  Rennard v. Woodworker's Supply, Inc., 101 Fed. Appx. at 307.

Mirzai does not contend that Antoniades' issuance of the written reprimand, the CAP, or the subsequent memoranda were accompanied by any corresponding impact on his job status.  Mirzai's pay was not reduced, he was not deprived of any benefits, and he was not demoted.  Nothing about the documents Mirzai has referenced evidence an immediate or practical effect on his job status.  To the contrary, the CAP, on its face, is designed as a rehabilitative tool aimed to assist Mirzai improve his work performance and to place him on notice of GSD's concerns.

Nor does the Court believe Mirzai's allegations concerning Antoniades' disagreeable and pestering treatment rise to the level of an adverse employment action.  In Sanchez v. Denver Public Schools, the plaintiff -- an educator with thirty years experience -- asserted an adverse employment action on the basis of disagreeable treatment on the part of her principal.  The plaintiff made the following allegations: (i) the principal had made several ageist remarks, including referring to an older substitute teacher as "an old fossil" and expressing her appreciation at having a number of "bright young teachers" at the first staff meeting of the school year; (ii) the plaintiff was the only teacher that the principal required to bring a doctor's note when she was sick; (iii) the principal threatened to write up the plaintiff for insubordination when the plaintiff walked out of the principal's office in the middle of a meeting to tend to her class; and (iv) the principal threatened to put the plaintiff on an improvement plan if she returned to the school the following year.  See 164 F.3d at 533.  The Tenth Circuit in Sanchez v. Denver Public Schools stated that it understood the plaintiff's distress over the principal's alleged disagreeable conduct, but concluded that the "conduct did not significantly affect her employment status and therefore did not constitute adverse employment action remediable under Title VII."  Id.  The Tenth Circuit reasoned that "'not everything that makes an employee unhappy' qualifies as [an adverse employment action], for

'otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" Id. (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).

Similar to the Tenth Circuit in Sanchez v. Denver Public Schools, the Court appreciates Mirzai's distress over Antoniades' alleged disagreeable conduct.  The problem with Mirzai's argument, however, is that, even if the allegations are true -- and the Court assumes them to be true for the purposes of ruling on this summary judgment motion -- without some evidence that the comments had some adverse effect on his employment status, they are not actionable as adverse employment actions.  While Mirzai may not have been happy working for Antoniades, and the two may not have gotten along, general pestering and dislike is not actionable under Title VII.

> **b.    Mirzai's Transfer to the Property Management Team in December 2004 was not an Adverse Employment Action.**

Mirzai argues that his transfer to the Property Management Team in December 2004 was an adverse employment action, because it was "unjustified and undeserved, and caused [Mirzai] great distress, as he was unfamiliar with the section he was transferred to."  Mirzai's Response at 11. Mirzai represents that he "did not request the transfer, and was essentially stripped of all his prior duties and placed into a situation where he was unfamiliar with the work required of him."  Id.

Although the Tenth Circuit continues "to liberally define the term 'adverse employment action' and take a case-by-case approach," the definition does not "encompass[] every 'action taken by a plaintiff's employer . . . that may affect the plaintiff's future employment opportunities.'"  Hillig v. Rumsfeld, 381 F.3d at 1033 (quoting Aquilino v. Univ. of Kan., 268 F.3d 930, 935 (10th Cir. 2001)).  Under the approach the Tenth Circuit has adopted, the scope of the definition "does not

extend to a mere inconvenience or an alteration of job responsibilities."  Tran v. Trs. of the State

Colls. in Colo., 355 F.3d 1263, 1267 (10th Cir. 2004)(quoting Heno v. Sprint/United Mgmt. Co., 208

F.3d 847, 857 (10th Cir. 2000)).  Moreover, the definition of adverse employment action excludes

"those acts that merely have a de minimis impact upon an employee's future job opportunities."

Hillig v. Rumsfeld, 381 F.3d at 1033.

In assessing whether Mirzai's transfer into the Property Management Division was an

adverse employment action, the Court once again finds the Tenth Circuit's holding in Sanchez v.

Denver Public Schools instructive.  Because of a decrease in enrollment at the elementary school

where the plaintiff had been teaching, she was involuntarily transferred to another elementary school.

See 164 F.3d at 530.  The plaintiff argued that her transfer was an adverse employment action

because her commute increased from five to seven minutes, to between thirty and forty minutes, and

because the other teachers at her grade-level in her original school had also not volunteered to be

transferred and had subsequently not been transferred.  See id. at 532.  The plaintiff admitted,

however, that her salary and benefits remained the same, that she continued to teach at the

elementary school level, and that the decrease in student population in her original school prompted

the transfer.  See id.  The plaintiff also asserted that the transfer was supposed to be limited to one

year, that she understood she was to remain a teacher in the district after that year, and that she

expected to be reassigned at the conclusion of the school year.  See id.

In affirming the district court's holding that the transfer was not an adverse employment

action, the Tenth Circuit in Sanchez v. Denver Public Schools stated that it could "not find any

special circumstances unique to this case that show this employment action was anything beyond a

mere inconvenience or alteration of job responsibilities."  Id.  The Tenth Circuit summarized that,

"[b]ecause [the plaintiff] experienced a purely lateral transfer, we agree with the district court that despite her personal discomfort she failed to establish a prima facie case of discrimination." Id.

Mirzai was transferred to the Property Management Team on December 16, 2004. Mirzai's transfer notice was labeled as "Temporary Job Assignment" and involved a project "to develop an accounting and tracking method for revenues that are due to the state for facilities that are being leased to private entities that are under the jurisdiction of [the Property Control Division]." Mirzai's Response, Exhibit 13, Memorandum from Bill Taylor to Moghbel Mirzai (dated December 16, 2004)("Transfer Letter"). Mirzai does not explain, however, how his transfer to the Property Management Team is anything more than a lateral transfer. It is Mirzai's responsibility to bring forth evidence that the transfer was adverse. Instead, in his Complaint, Mirzai merely describes the transfer as "suspicious," Complaint ¶ 35, at 8, and in his response to GSD's motion for summary judgment, Mirzai contends that the transfer caused him distress because he was unfamiliar with the work required of him in the new division, and that it is reasonable to assume that other employees could have been selected to fill vacancies on the Property Management Team, see Mirzai's Response ¶ 15, at 6, at 11.

The Court does not find Mirzai's argument persuasive. First, the Tenth Circuit has indicated that "requiring an employee to develop new skills is not the kind of adversity that can support a prima facie case of retaliation." Tran v. Trs. of the State Colls. in Colo., 355 F.3d at 1268. See Hillig v. Rumsfeld, 381 F.3d at 1033 (citing Tran v. Trs. of the State Colls. in Colo., and describing the requirement of having to learn new skills as the result of a job reassignment as an action having a de minimis impact and that would not constitute an adverse employment action). Second, outside of Mirzai's speculation that another employee could have been transferred, he has not presented any

special circumstances unique to his case that demonstrate his transfer was anything more than a mere inconvenience or alteration of job responsibilities. Indeed, in his deposition, Mirzai stated that his supervisor in the Property Management Team, Northrup, was "great," that he learned a great deal working for that team, and that he did "tremendous work" on the team. Mirzai's Deposition at 91:5-17. While the Court sympathizes with Mirzai's personal discomfort associated with his transfer, because Mirzai has not presented evidence that his transfer was not lateral, it does not constitute an adverse employment action necessary to establish a prima facie case of discrimination.

### 3. The Court need not Decide Whether Mirzai was Treated Differently from Similarly Situated Employees.

Mirzai contends that he was disparately treated with regard to younger, non-Persian female employees. See Complaint ¶ 39, at 9. Mirzai contends that Antoniades frequently demanded to know "what [Mirzai] did all day," pressured him to not take breaks, and required that he present verification of medical appointments and copies of his degrees and licenses -- requirements he alleges were not imposed on other project managers. Mirzai's Response at 10-11. See Mirzai's Deposition at 58:13; 61:12-62:4; 66:17-23. Mirzai also represents that GSD supported Antoniades -- a younger, female employee -- in her harassing behavior towards him, but disregarded his concerns regarding Antoniades. See Mirzai's Response at 12. Although the Court acknowledges that, at the prima facie stage of the McDonnell Douglas analysis, these assertions may be sufficient to establish that Mirzai was treated differently than other similarly situated employees, because the Court has already determined that Mirzai has not demonstrated that he suffered an adverse employment action, the Court need not decide that issue at this time.

-30-

**B.      MIRZAI HAS NOT MET HIS INITIAL BURDEN TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATORY RETALIATION.**

As a supplement to his claims alleging that he was discriminated against on the basis of his gender, age, and national origin, Mirzai alleges a discrimination claim under a theory of retaliation. See Complaint ¶¶ 36-42, at 8-9; Mirzai's Response at 14-17.   "In addition to seeking to remedy workplace discontent, Title VII proscribes retaliation against employees who voice opposition to, or participate in an investigation or proceeding alleging, a violation of Title VII by his or her employer." Officer v. Sedgwick County, No. 05-3404, 2007 U.S. App. LEXIS 4705, *34 (10th Cir. Feb. 27, 2007).   As in the traditional discrimination context, when a plaintiff is attempting to prove retaliatory discrimination by means of indirect evidence, the McDonnell Douglas framework provides the structure for the court's analysis.  See Tapia v. City of Albuquerque, 170 Fed. Appx. 529, 533 (10th Cir. 2006).  To establish a prima facie case of retaliation under the first phase of the McDonnell Douglas analysis, Mirzai must demonstrate that: (i) he engaged in protected activity in opposition to GSD's discriminatory conduct; (ii) he suffered an adverse employment action; and (iii) there was a causal connection between his participation in the protected activity and the adverse employment action to which he was subjected.  See Lyons v. Red Roof Inns, Inc., 130 Fed. Appx. 957, 965 (10th Cir. 2005).

Mirzai contends that he engaged in a series of protected activities that satisfies the first prong of the prima facie analysis.  Mirzai states that, on September 24, 2004, his counsel sent a letter to Bill Taylor that documented Mirzai's reservations concerning Antoniades' instructions that he contact Madani at Pars Construction, and Mirzai's assessment that the written reprimand and CAP that had been issued since his initial reluctance to contact Madani were discriminatory and

retaliatory.  See Mirzai's Response at 15; Mirzai's Response, Exhibit 4, Letter from Gilbert J. Vigil to Bill Taylor (dated September 24, 2004).  In addition to the September 24, 2004 letter, in a letter dated November 11, 2004, Mirzai's attorney issued a Tort Notice to GSD; among other claims, the notice specifically cited discrimination, retaliation, breach of contract, and breach of the covenant of good faith and fair dealing as claims that Mirzai might bring against GSD.  See Mirzai's Response at 15-16; Tort Notice.  Finally, Mirzai represents that his attorney first submitted his case for intake to the HRD on October 14, 2004, but because of intake and processing errors, the Charge was not processed until July 7, 2005.  See Mirzai's Response ¶ 2, at 3; Charge of Discrimination.

Just as with his discrimination allegations, the flaw in Mirzai's retaliation claim is his inability to demonstrate that he suffered an adverse employment action.  In his discussion of the retaliation claim in his response to GSD's motion for summary judgment, Mirzai references his earlier discussion of the August 3, 2004 letter of reprimand that Antoniades issued and the subsequent CAP and memoranda that followed that letter, and his December 2004 transfer to the Property Management Team, as the adverse employment actions that GSD took against him in retaliation for his protected activity.  See id. at 16.  The Court has already determined that, as a matter of law, these actions were not adverse employment actions.

Mirzai alleges that a causal connection between his protected activity and GSD's retaliatory actions can be inferred from the temporal proximity of GSD's actions -- all taken subsequent to his expressing his concerns regarding Madani and Pars Construction -- and from the alleged intimate relationship between Antoniades and Madani.  See id. at 17.  The Court acknowledges that Mirzai's burden at the prima facie phase of the McDonnell Douglas analysis is not onerous, and that this evidence of causal connection might be enough to raise an inference of retaliatory discrimination if

-32-

there were an adverse employment action.  Because the Court has already determined that Mirzai has not established that he suffered an adverse employment action, the Court need not decide that issue at this time.

### C.   THE COURT NEED NOT CONTINUE THE <u>MCDONNELL DOUGLAS</u> ANALYSIS BECAUSE MIRZAI HAS NOT ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION.

Under the <u>McDonnell Douglas</u> analysis, if Mirzai had been able to establish a prima facie case of discrimination, the burden of production would have shifted to GSD to articulate a legitimate, non-discriminatory reason for any adverse employment action.  The Court notes that each of the letters of reprimand and other associated memoranda that Mirzai cites as the basis for his claim of adverse action articulate legitimate, non-discriminatory reasons for the action.

In the August 3, 2004 letter of reprimand. Antoniades represents that Mirzai is being reprimanded for insubordination and inefficiency.  <u>See</u> August 3, 2004 Reprimand at 1-3.  The CAP and Revised CAP that GSD issued on August 13, 2004 cite Mirzai's refusal to follow his supervisor's instructions and inefficient, unproductive, untimely, and poorly completed work.  <u>See</u> CAP at 1; Revised CAP at 1.  Antoniades' August 17, 2004 memorandum indicates that Mirzai could be subject to further disciplinary action, including dismissal, because he failed to return his CAP by August 16, 2004, in accordance with previously given instructions.  <u>See</u> August 17, 2004 Memorandum at 1.  The September 22, 2004 reprimand that Antoniades issued to Mirzai referenced Mirzai's ongoing failure to complete his CAP, and a recent project that Antoniades alleged he handled inadequately and failed to complete.  <u>See</u> September 22, 2004 Reprimand at 1.  The Tenth Circuit has acknowledged that "[p]oor performance is a quintessentially legitimate and nondiscriminatory reason for termination."  <u>Bryant v. Farmers Ins. Exch.</u>, 432 F.3d at 1125.

GSD also articulated general personnel reasons for transferring Mirzai to the Property Management Team.  In the memorandum that Taylor sent Mirzai, Taylor stated that the Property Management Team was vacant two positions and required assistance to complete a recently assigned project.  The Court notes that, had Mirzai been able to articulate a prima facie case of discrimination, GSD's burden to articulate legitimate, non-discriminatory reasons for its actions "is one of production, not one of persuasion." EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d at 1191.

Mirzai counters that each of the reasons GSD proffers is pretextual.  Mirzai argues that Antoniades was motivated to cast him in a negative light after he questioned her judgment in working with Pars Construction. See Mirzai's Response at 13.  Mirzai also seems to suggest that Antoniades' intimate relationship with Madani created a conflict of interest between her desire to assist Madani receive state business and her obligation to GSD. See id. at 14.

Nevertheless, while the Court acknowledges the legitimate, non-discriminatory reasons that the GSD has proffered, and has carefully considered the allegations of pretext that Mirzai offers, it need not decide whether the parties have met their respective burdens at this time.  Because the Court has resolved Mirzai's Title VII claim "based upon the lack of a prima facie case, it is unnecessary to consider the remainder of the McDonnell Douglas formulation." Belcher v. Boeing Commercial Airplane Group, 105 Fed. Appx. 222, 227 (10th Cir. 2004).

## III.  THE COURT WILL EXERCISE ITS DISCRETION UNDER 28 U.S.C. § 1367(c) AND WILL DECLINE JURISDICTION OVER MIRZAI'S STATE-LAW CLAIMS.

In addition to his federal discrimination claim under Title VII, Mirzai's Complaint also contains state-law claims against GSD for breach of his employment contract and breach of the covenant of good faith and fair dealing.  Because the Court is not obligated to exercise jurisdiction

over Mirzai's state-law claims, and because it believes that, now that it has dismissed all of Mirzai's federal claims over which it has original jurisdiction, exercising jurisdiction over those claims would not "vindicate values of economy, convenience, fairness, and comity," Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164, the Court will remand Mirzai's state-law claims to the State of New Mexico First Judicial District.

GSD contends that the Court should dismiss Mirzai's age discrimination claim for failing to follow proper filing procedures and failing to exhaust his administrative remedies. See Defendant State of New Mexico General Services Department's Reply in Support of their Motion for Summary Judgement at 6-7, filed February 20, 2007 (Doc. 20)("GSD's Reply"). GSD points out that, in the Charge of Discrimination Mirzai submitted to the HRD, he did not mark the appropriate box for age discrimination. See id. at 6 (citing Charge of Discrimination). While GSD acknowledges that this omission is not dispositive, it asserts that any claim for age discrimination in the charging documents that Mirzai subsequently filed was too vague to put the GSD on notice that it should defend against an age discrimination claim. See GSD's Reply at 7. GSD contends that Mirzai "has failed to exhaust his administrative remedies and give proper notice of [his age discrimination] claim, and [the] Court should summarily dismiss [the] claim on jurisdictional grounds." Id.

Count II of Mirzai's Complaint raises a cause of action for breach of contract. In his Complaint, Mirzai contends that the GSD violated his employment contract "by singling him out for [a]dverse employment actions based on differential treatment with respect to the terms, conditions and privileges of employment." Complaint ¶ 46, at 9. Mirzai asserts that it is "undisputed" that the State Personnel Board Rules and Administrative Directives governed the terms of his employment, and contends that GSD breached its own rules and policies when it subjected him to adverse action

-35-

in response to his attempt to prevent unlawful activity.  <u>See</u> Mirzai's Response at 17-18.

GSD asserts that it did not violate any policy provisions and that therefore there was no breach of any implied contract governing Mirzai's employment.  <u>See</u> Summary Judgment Memorandum at 11.  Mirzai counters, without citing any specific policy provisions or regulations that GSD or the State Personnel Board has promulgated, that GSD's assertion "stops short of explaining why Ms. Antoniades was eventually terminated from her employment for the very same conduct that [Mirzai] complained of . . . [and] sidesteps discussing Ms. Antoniades' personal relationship with Mr. Madani."

Mirzai also alleges that GSD "breached its contract with [Mirzai] in failing to comply with established rules and procedures concerning the Corrective Action Plan and Employee Development Appraisal, which she had him initial prior to noting negative appraisals on every single discussion point."  Mirzai's Response at 18.  <u>See</u> Complaint ¶ 19, at 4.  Mirzai does not cite to any specific rules, regulations, or policy that GSD violated in association with his allegation.  Mirzai does not document his allegation regarding the initialing of the Employee Development and Appraisal form in his Statement of Facts or in his deposition testimony, his initials do not appear on the CAP or Revised CAP that Mirzai has submitted to the Court as exhibits, and he has not submitted any Employee Development and Appraisal form as an exhibit in opposition to this motion.

Finally, Mirzai alleges that the GSD violated the covenant of good faith and fair dealing implicit in his employment contract, because it intentionally subjected him to adverse employment actions.  <u>See</u> Complaint ¶¶ 49-50.  Mirzai contends that he has offered evidence that the GSD acted in bad faith in conjunction with its inappropriate issuances of verbal and written reprimands and in unfairly transferring him to another division.  <u>See</u> Mirzai's Response at 19.  The GSD counters that,

-36-

because Mirzai was not subjected to any adverse employment action, he was not deprived of any of the benefit of his employment agreement, and therefore it has not violated the covenant of good faith and fair dealing.  See Summary Judgment Memorandum at 12.

Because the Court has dismissed all of Mirzai's federal claims over which it has original jurisdiction, it is free to decline to exercise jurisdiction over his remaining state-law claims.  See 28 U.S.C. § 1367(c)(3).  The remaining claims all involve the interpretation of state substantive and administrative law, and implicate conditions of state employment and questions of state employment policy.  The Court believes that, in the interest of comity, these questions are best answered by state courts.  The Court declines to exercise supplemental jurisdiction over Mirzai's remaining state-law claims and will remand the action to the State of New Mexico First Judicial District for further proceedings.

## IV.   THE COURT WILL DENY GSD'S REQUEST FOR ATTORNEYS' FEES.

The GSD requests attorneys' fees and costs in defending this action.  See Summary Judgment Memorandum at 12.  "It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."  Christianburg Garment Co. v. EEOC, 434 U.S. 412, 415 (1978).  For actions proceeding under Title VII, however, the Court may, in its discretion, "allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k).  Before a prevailing defendant may be awarded fees in a Title VII action, it must demonstrate "the plaintiff's claim was brought in bad faith, or was frivolous, unreasonable, or without foundation."  Sorbo v. United Parcel Serv., 432 F.3d 1169, 1181 (10th Cir. 2005).

The GSD has not argued, and the Court does not believe, that Mirzai's claims against it were brought in bad faith, were frivolous, or were unreasonable.  In exercising its discretion to award

fees, the Court must be careful to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Christianburg Garment Co. v. EEOC, 434 U.S. at 421-22. Under the circumstances of this case, and based on the record before it, the Court will not award fees at this time.

**IT IS ORDERED** that Defendant State of New Mexico General Services Department's Motion for Summary Judgment is granted in part. All Mirzai's federal claims are dismissed with prejudice. The remainder of the motion, claims, and case is remanded to the State of New Mexico First Judicial District.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Gilbert J. Vigil
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Josh A. Harris
Mark D. Trujillo
Beall & Biehler
Albuquerque, New Mexico

     *Attorneys for the Defendant*

-38-